## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

LUIS OMAR ALVAREZ,      )
      )
      Plaintiff,      )
      )
v.      )      CV422-087
      )
IRON WORKERS UNION      )
LOCAL 709, *et al.*,      )
      )
      Defendants.      )

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Plaintiff Luis Omar Alvarez, proceeding *pro se*, filed this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Counts 1-3), and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et. seq.* ("LMRDA") (Counts 4-11).  *See* doc. 1 at 14-31.  Before the Court is Defendants Eric Dean, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("IA"), Iron Workers Union Local 709 ("Local 709"), William McMillan, and Derrick Sample's (the "Union Defendants") Partial Motion to Dismiss, doc. 14, and their motion to stay this case pending disposition of the Partial Motion to Dismiss, doc. 15.  In a single filing, Plaintiff opposes the merits of those two motions, and asks the Court to "[s]trike"

them.  Doc. 16 at 1.  The Union Defendants oppose Plaintiff's request to strike the filings, doc. 18, and Plaintiff replied, doc. 21.

Also before the Court is Defendant United States Department of Labor's ("DOL") Motion to Dismiss, doc. 19, and motion to stay the case pending disposition of the Motion to Dismiss, doc. 20.  Plaintiff responded in opposition to the DOL's Motion to Dismiss, doc. 22; he did not respond to DOL's stay request.  *See generally* docket.

Plaintiff has also filed motions which require disposition.  He requests an order directing Defendants to pay the costs associated with serving the Complaint, doc. 7; no party has responded to that request.  *See generally* docket.  He also filed a "Motion to Compel", doc. 23, and a supplementary motion, doc. 26, to which all defendants responded in opposition, docs. 24 & 25, and Plaintiff replied, doc. 27.  All of these motions are ripe for disposition.

## BACKGROUND

Plaintiff, a Hispanic man, doc. 1 at 14, is a "journeyman iron worker" and a member of Local 709, which is a "[union] chartered by [IA]" and headquartered in Pooler, Georgia.  *Id.* at 3 (cleaned up).  He alleges that he began attending "[u]nion meetings" around June 2020.  *Id.* at 5.

After "notic[ing] a few discrepancies" at the meetings, he "decided to start asking questions." *Id.* The Complaint primarily consists of a lengthy account of Local 709's deficient management, and various instances of "insult[s], harass[ment], [and] "discriminat[ion]", *id.*, against Plaintiff after he began questioning Local 709's practices. *See, e.g., id.* at 4-14. He contends that those adverse actions were "based . . . on [his] race, color, and national origin" and were retaliation for his exercise of his rights under the LMRDA. *Id.* at 2 (cleaned up).

Plaintiff alleges that Local 709 members' "[s]alary raises" were "shortchanged . . . without letting the membership know." Doc. 1 at 5. He also alleges various deficiencies in the union's voting procedures, that union members are not afforded a sufficient opportunity to participate in union decision-making, and that union officials generate inaccurate meeting minutes. *See, e.g., id.* at 5-7, 9-10. The union's operating hours make it difficult for him to participate in "union business." *Id.* at 5. He alleges that Local 709 members drink beer at meetings in violation of the union's constitution, and that union officials misappropriate union funds. *Id.* at 9-10, 12.

The Complaint also details various adverse actions taken against Plaintiff by Defendants.  He alleges that "[u]nion officers . . . insult[ed], discriminat[ed], and harass[ed]" him "in front of everybody", in multiple instances, *see, e.g.*, doc. 1 at 5-6, and on at least one of those instances, McMillan, Local 709's Financial Secretary Treasurer and Business Manager, and Sample, Local 709's President, did not intervene. *Id.* at 3-5.  He alleges that he was " 'black-balled' by the Union" after he "started asking questions" about its procedures. *Id.* at 8.  Specifically, union officials attempted to refer him to a job with which he was dissatisfied, and which he declined repeatedly. *Id.* at 8.  He did not receive sufficient work referrals after returning to work from several surgeries. *Id.* at 8-9.  When Plaintiff complained, McMillan "threatened [Plaintiff] with bodily injury." *Id.* at 9.  He also alleges that Local 709 referred him to work for companies which "break the law and at the same time stiff members", and that Local 709 officials "interfer[ed] with his ability to obtain work. *Id.* at 11, 13.  He claims that Defendants have not complied with his request to provide a copy of the union's collective bargaining agreement, *id.* at 8, and points out deficiencies in a "Hearing/Trial" held by union officials regarding grievances he filed with the union. *Id.* at 12.

Plaintiff alleges that he informed IA of his various grievances regarding the union, and that IA and Dean, its president, did not take sufficient action. *See, e.g.*, doc. 1 at 3, 13. He alleges that the DOL has not sufficiently facilitated his attempts to obtain a copy of Local 709's collective bargaining agreement, and that it has not sufficiently investigated his grievances. *Id.* at 13-14. He asserts that Defendants took the previously-discussed actions against him due to his "race, color, and national origin." *Id.* at 2 (cleaned up). Plaintiff named Local 709 in an Equal Employment Opportunity Commission ("EEOC") charge discussing some of the grievances in his Complaint, doc. 14-1 at 2, and subsequently received a right-to-sue letter. *Id.* at 3.[1]

---

[1] The Court "may consider a document attached to a motion to dismiss, without converting it to a motion for summary judgment, when the plaintiff refers to the document in his complaint, it is central to his claims, and there is no reasonable dispute as to the authenticity of the document." *Booth v. City of Roswell*, 754 F. App'x 834, 836 (11th Cir. 2018) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). The Union Defendants attach a copy of Plaintiff's charge to their Partial Motion to Dismiss. Doc. 14-1 at 2. Although Plaintiff does not attach the EEOC charge to his Complaint, the Complaint references the charge. *See, e.g.*, doc. 1 at 4. The charge is "central to his claims," since filing the charge with the EEOC is a precondition to filing suit in federal court. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Finally, no party disputes the authenticity of the document. *See generally* docket. Accordingly, the Court will consider the information in the EEOC charge when analyzing the Defendants' motions to dismiss.

The Union Defendants filed a Partial Motion to Dismiss several of Plaintiff's claims, doc. 14,[2] and a request that the Court stay discovery pending disposition of the Partial Motion to Dismiss, doc. 15. The DOL moves to dismiss all of Plaintiff's claims against it, doc. 19, and to stay discovery pending disposition of its Motion to Dismiss, doc. 20. Plaintiff filed motions requesting various relief, including a motion asking the Court to order Defendants to pay the costs associated with service of his Complaint, doc. 7, a motion to "strike" the Union Defendants' pleadings, doc. 16, and a Motion to Compel, as supplemented, docs. 23 & 26.

## ANALYSIS

### I. *Rule 12(b)(6) Standard*

On a motion to dismiss under Rule 12(b)(6), the factual allegations in a complaint are assumed true and construed in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent

---

[2] The Union Defendants explain that they "only seek dismissal of the most clearly meritless claims and reserve the right challenge the remaining claims at a later date." Doc. 14 at 11.

dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations, citations, and alterations omitted); *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory" (citations and internal quotation marks omitted)).

"Factual allegations must be enough to raise a right to relief above the speculative level," *i.e.*, they must do more than merely create a " 'suspicion [of] a legally cognizable right of action,' on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" *Stephens*, 500 F.3d at 1282 (quoting *Twombly*, 550 U.S. at 545). A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"A document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Nevertheless, *pro se* parties are still required to comply with minimum pleading standards set forth in the Federal Rules of Civil Procedure. *Stubbs v. CitiMortgage, Inc.*, 549 F. App'x 885, 887 (11th Cir. 2013); *see also Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (citation omitted) (stating "[a]lthough we construe them liberally, pro se complaints also

must comply with the procedural rules that govern pleadings"). In particular, the liberal construction "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Farkas v. SunTrust Mortg., Inc.*, 447 F. App'x 972, 973 (11th Cir. 2011) (internal citations and quotations omitted).

II.   *Plaintiff's Title VII claims against the Union Defendants*

The Union Defendants ask the Court to dismiss all of Plaintiff's Title VII claims (contained in Counts 1-3) against McMillan, Sample, and Dean because they are not his "employer" within the meaning of the statute. Doc. 14 at 3. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person[.]" 42 U.S.C. § 2000e(b). The Eleventh Circuit has explained that relief under Title

VII "is available against only the employer and not against individual employees whose actions would constitute a violation of the Act[.]" *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (citing *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)); *see also Worthy v. Selph*, 2018 WL 3349704, at *3 (S.D. Ga. July 9, 2018) (Baker, M.J.) ("[T]he Court should DISMISS all of Plaintiff's claims against Defendants . . . because individual employees are not subject to liability under Title VII."). Plaintiff does not address this argument in his response and reply. *See generally* docs. 16 & 21. Accordingly, the Court agrees with the Union Defendants that Plaintiff has failed to state a Title VII claim against McMillan, Sample, and Dean.

The Union Defendants also argue that Plaintiff's Title VII claims against IA should be dismissed because IA was not named in Plaintiff's EEOC charge. Doc. 14 at 3; *see also* doc. 14-1 at 2 (Plaintiff's charge only names Local 709). "An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII[.]" *Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1339 (11th Cir. 2017) (citing *Wilkerson*, 270 F.3d at 1317). "The first step down [the] path [of exhaustion] is filing a timely charge of discrimination with the EEOC."

10

*Wilkerson*, 270 F.3d at 1317. Additionally, "the general rule is that 'a party not named in the EEOC charge cannot be sued in a subsequent civil action' under Title VII." *Sharp v. City of Montgomery*, 2021 WL 5989104, at *7 (M.D. Ala. Dec. 17, 2021) (quoting *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994)); 42 U.S.C. § 2000e-5(f)(1) (A Title VII action "may be brought against the respondent named in the charge . . . ."). A motion to dismiss is properly granted where the Plaintiff failed to raise the challenged claims to the EEOC in a formal charge of discrimination. *Lambert v. Ala. Dept. of Youth Services*, 150 F. App'x 990, 994 (11th Cir. 2005).

Plaintiff asserts that the omission of IA from the charge was not "because of [his] oversight"; rather, the EEOC official who generated the charge refused his request to include, *inter alia*, allegations against IA. Doc. 16 at 3. He appears to contend that the Court should deem IA named in his charge based on the EEOC official's "refut[ation] or contradict[ion]." *Id.* He attached an email exchange with the EEOC official to his response which indicates that the official generated the charge by summarizing allegations in a draft charge Plaintiff sent to the official. *See* doc. 16 at 13-15; *see also id.* at 16-19 (Plaintiff's draft charge).

11

After Plaintiff complained to the official that her summary did not adequately capture the allegations in his draft charge, the official explained that "[not] all details will be listed on the face of the charge", and directed him to "review and sign" the charge, unless he "[did] not wish the charge to be read the way [she wrote] it." Doc. 16 at 14-15.

The Court should not consider claims and allegations in Plaintiff's draft charge which were not included in the final signed charge. Although the EEOC appears to employ a practice of generating charges by having officials summarize complainants' allegations,[3] Plaintiff does not cite, and the Court has not identified, a requirement that a complainant's charge is limited to allegations an EEOC official chooses to include in a summary. To the extent Plaintiff contends that his failure to include claims and parties in the charge should be excused because the EEOC official's refusal to add to her summary, doc. 16 at 3, courts have

---

[3] *See* U.S. Equal Employment Opportunity Commission, *How to File a Charge of Employment Discrimination*, https://www.eeoc.gov/how-file-charge-employment-discrimination ("An EEOC staff member will prepare a charge using the information you provide, which you can review and sign online by logging into your account."); *see also Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 418-19 (2008) (Thomas, J., dissenting) (discussing the EEOC's charge-drafting processes).

rejected similar arguments.[4]  As in *Hopkins*, 2014 WL 6610138, at *6, the

charge Plaintiff signed expressly states "[i]f additional paper is needed,

attach extra sheet(s)[.]"  Doc. 14-1 at 2.  Accordingly, Plaintiff's only

"charge" is the document generated by the EEOC official and signed by

Plaintiff, which does not name IA.  Doc. 14-1 at 2.[5]

Plaintiff's failure to name IA in the charge, however, does not

necessarily mandate dismissal of his Title VII claims against IA.

"[B]ecause the EEOC charge typically is prepared by a layperson . . .

courts liberally construe the naming requirement to avoid technical

roadblocks to suit."  *Sharp*, 2021 WL 5989104, at *7 (citing *Virgo*, 30 F.3d

---

[4]  *See, e.g.*, *Hopkins v. City of Jacksonville*, 2014 WL 6610138, at *6 (M.D. Fla. Nov. 19, 2014) ("Hopkins explains that EEOC personnel told him his claim was too long, yet the form expressly permits the filing of additional pages."); *Eaves v. Work Force Cent. Fla.*, 2014 WL 11456304, at *5 n.7 (M.D. Fla. May 30, 2014) ("Plaintiff could have even hand-written a sentence about [additional allegations which he contends the EEOC official would not include] on his Amended Charge[.]"); *Jerome v. Marriott Residence Inn Barcelo Crestline/AIG*, 2005 WL 8154842, at *3 (N.D. Ga. Mar. 25, 2005) ("Although Plaintiff contends that he informed the EEOC intake personnel of possible pay discrimination based on race, no such factual allegation appears in Plaintiff's EEOC Charge, which he signed.  Plaintiff could have informed the EEOC that his Charge was incomplete and could have declined to sign the Charge until any mistakes or omissions were corrected.").

[5]  Plaintiff's charge could be construed to make a passing reference to IA: "My employer sent me to another job that is more stressful.  I believe this is due to the complaints I sent to Headquarters about the union."  Doc. 14-1 at 2.  To the extent this constitutes an allegation that individuals at Local 709 retaliated against Plaintiff after he submitted complaints to IA about the local union, the allegation does not come close to raising a complaint against IA, or naming it as a respondent in the charge.

at 1358) (quotations omitted). The Eleventh Circuit has explained that a plaintiff may satisfy Title VII's exhaustion requirement despite failing to name an employer in an EEOC charge if "the purposes of Title VII are met." *Virgo*, 30 F.3d at 1359. *Virgo* provided several factors a court should weigh when deciding whether the purposes of Title VII are met:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Virgo*, 30 F.3d at 1359. "A sixth factor looks to whether an EEOC investigation reasonably would have encompassed the unnamed party." *Sharp*, 2021 WL 5989104, at *7 (citing *Hamm v. Members of the Bd. of Regents of Fla.*, 708 F.2d 647, 650 (11th Cir. 1983)). "The burden is on the plaintiff to explain why the [party] was not named and to demonstrate that the purposes of Title VII have been satisfied regardless of the omission." *Frazier v. Smith*, 12 F. Supp. 2d 1362, 1369 (S.D. Ga. 1998). For the following reasons, taking all of Plaintiff's allegations as true, he has failed to carry that burden.

"Applying the first factor, most courts have found a similarity of interests between a named and unnamed party when there is some legal relationship beyond a mere contractual relationship, such as employer-employee or parent-subsidiary." *Lewis v. City of Gainesville*, 2010 WL 11646721, at *3 (N.D. Fla. Mar. 16, 2010).  Plaintiff alleges that Local 709 is chartered by IA, and "operates under [IA's] Constitution[.]"  Doc. 1 at 3; *see also id.* at 7 (explaining that IA's Constitution governs certain aspects of Local 709's election procedures).  He also alleges that he "follow[ed] the [IA] Constitution" by pursing an appeal of a Local 709 tribunal's decision against him to IA.  *Id.* at 12-13.[6]  Even assuming Plaintiff has alleged sufficient facts to show that the first factor weighs in his favor, he has not satisfied the exhaustion requirement by meeting Title VII's "purposes" under the remaining *Virgo* factors.  *See Taylor v. People Sales & Profit Co.*, 2019 WL 4861892, at *2 (M.D. Ga. Oct. 2, 2019) (granting defendant's summary judgment motion when there was no

---

[6] Plaintiff also raises multiple allegations in his response which were not addressed in his initial Complaint.  *See* doc. 16 at 3-4 (alleging, e.g., that "Defendants share accounting, human-resources, training, payroll, and management services").  Even if the Court considers these additional allegations, as discussed below, the Court's analysis of the remaining *Virgo* factors demonstrates that the purposes of Title VII are not met.

genuine dispute of material fact, and finding "even if there is some similarity of interest between [defendant] and its franchisor that was named in [plaintiff's] EEOC charge, the rest of the [*Virgo*] factors weigh against finding that the purposes of Title VII were met by [the] charge.").

Under the second factor, Plaintiff does not allege any facts suggesting that he could not have "ascertained the identity of [IA] at the time the EEOC charge was filed." *Virgo*, 30 F.3d at 1359.   On the contrary, he alleges that he appealed the Local 709 tribunal's decision to IA before he signed the charge.  *See* doc. 1 at 12-13.[7]  Nor does Plaintiff allege any facts suggesting that IA received adequate notice of the charges under the third *Virgo* factor.  *See generally* doc. 1.  He correctly notes that his Complaint includes allegations that he "appealed, objected, and repeatedly cr[ied] out" regarding his union-related grievances to various defendants, including IA, doc. 16 at 5; however, he does not assert

---

[7] Plaintiff argues that the second factor weighs in his favor because he "did not know at the time of filing EEOC's charges that he was in fact 'going to file charges in Federal Court against Defendants: ALL OF THEM. [sic]" Doc. 16 at 4.  Plaintiff's assertion that he did not plan to file a federal lawsuit against IA when he signed the EEOC charge does not indicate that he was unaware of IA's identity.

that IA had notice of the EEOC charge.[8]  Given this lack of notice, "it follows that Defendant [IA] was not afforded an opportunity to participate in the [EEOC] reconciliation process" under the fourth factor. *Pollard v. Mark*, 2008 WL 11334021, at *4 (N.D. Ga. Apr. 3, 2008).  Under the fifth factor, "[i]n view of the fact that [IA] was not a participant in the [EEOC] process, it is only reasonable to assume that it was prejudiced by the exclusion as it was precluded from advancing any defenses[.]" *Waltz v. Dunning*, 2014 WL 7409725, at *6 (N.D. Ala. Dec. 31, 2014).  Under the final factor, Plaintiff has not shown that "an EEOC investigation reasonably would have encompassed [IA]." *Sharp*, 2021 WL 5989104, at *7.  The charge does not name IA as a respondent or allege any facts regarding IA which could be construed as allegations that it violated Title VII. *See* doc. 14-1 at 2.  Since IA's "potential involvement in the alleged discrimination is [not] inferable from [Plaintiff's] allegations" in the charge, he has not shown that the sixth factor weighs in his favor. *Sharp*, 2021 WL 5989104, at *7.  Accordingly, Plaintiff has not carried his burden of showing that "the purposes of [Title VII] are met", and that its

---

[8] Plaintiff's conclusory assertion in his response that "[t]here is no doubt in [his] mind that [IA] knew of [the] EEOC charges" is insufficient.  Doc. 16 at 5; *see Iqbal*, 556 U.S. at 678.

exhaustion requirement should be excused, *Virgo*, 30 F.3d at 1358-59, and the Court should find that he has not stated a Title VII claim against IA.[9]

The Union Defendants also ask the Court to dismiss Count 2, Plaintiff's Title VII "hostile environment" claim, doc. 1 at 15 (capitalization altered), because it is based on allegations not included in his EEOC charge.  Doc. 14 at 5-6.  The Eleventh Circuit has "noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate."  *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). Accordingly, "a 'plaintiff's judicial complaint is limited by the scope of the

---

[9] In his response, Plaintiff also appears to argue that his Title VII claims against IA should be allowed to proceed because IA should be aggregated with Local 709 as his "employer."  *See* doc. 16 at 6 (citing *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999)).  In *Lyes*, however, the Eleventh Circuit explained that an "employer" is an entity with fifteen or more employees under Title VII, and that a plaintiff may aggregate entities in certain contexts "for the purposes of counting employees."  166 F.3d at 1340-41.  Accordingly, this argument does not address whether Plaintiff's failure to name IA in the charge should be excused under *Virgo*. *See Richardson v. Jackson*, 2021 WL 9598490, at *18-22 (N.D. Ga. Sept. 16, 2021) (evaluating whether a plaintiff's failure to name a party in her EEOC charge should be excused under *Virgo*, and whether an entity should be aggregated as her "employer" under *Lyes*, as two distinct inquiries).

EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Id.* at 1280 (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003)). Courts are nonetheless "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]. [Cit.] As such, . . . the scope of an EEOC complaint should not be strictly interpreted [Cit.]" *Id.* (quotations and citations omitted).

The closest Plaintiff comes to responding to the Union Defendants' argument is his complaint that the EEOC official did not adequately summarize his allegations in the charge. *See* doc. 16 at 3. As discussed, however, Plaintiff did not include those additional allegations in the charge, and the Court may not consider them for Title VII exhaustion purposes. Further, the Court agrees with the Union Defendants that Plaintiff's harassment claims in Count 2 could not "reasonably be expected to grow" out of the allegations in the charge, *Gregory*, 355 F.3d at 1280, a conclusion which Plaintiff does not address. *See generally* doc. 16 at 1-8. In his charge, Plaintiff alleges that the following potentially adverse actions were taken against him: (1) a company terminated him

after he did not timely complete classes and exams required by the company, (2) his employer sent him to "another job that is more stressful." Doc. 14-1 at 2. He alleges that these actions were based on "complaints [he] sent to Headquarters about the union", and that he was "discriminated against because of [his] race . . . and retaliated against in violation of Title VII[.]" *Id.* In contrast, Count 2 of his Complaint alleges (to the extent the Court can discern specific allegations in Count 2), that:

- Plaintiff was subject to verbal conduct and assault by Defendants themselves and allow others to follow suit. As well as threatened with bodily harm.
- Management. Administrators and/or [IA's] level Officers knew or should have known of the abusive conduct. Plaintiff provided ("ED") the International General President with ample documentation, evidence and/or several attempts for him to have known and done something about it. [sic]

Doc. 1 at 15-16. Given the attenuation between those allegations and the allegations in Plaintiff's charge, the Court should find that he has not stated a claim against the Union Defendants in Count 2.[10]

---

[10] The Union Defendants seek dismissal of "Plaintiff's hostile environment and harassment claims in Count 2 *and elsewhere*", doc. 14 at 5 (emphasis added); however, the relevant portion of their Motion to Dismiss only discusses Count 2. *See id.* at 5-6. Although the Union Defendants have demonstrated a defect in Count 2, they have not pointed to "harassment or hostile environment claims" located "elsewhere" in Plaintiff's Complaint, *id.*, and the Court declines to locate those claims, and evaluate whether they should be dismissed. *Cf. Chavez v. Sec. Fla. Dept. Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .")

III.    *Plaintiff's LMRDA claims against the Union Defendants*

The Union Defendants argue that Plaintiff's claims under the LMRDA, a statute "dealing with various facets of internal union affairs and labor-management relations", *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 783 F.2d 237, 239 (D.C. Cir. 1986), in Counts 9-11 should be dismissed.[11]   Doc. 14 at 7.   Plaintiff bases Count 9 on 29 U.S.C. § 431, which falls under Title II of LMRDA.   *See Dole v. Loc. 427, Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO*, 894 F.2d 607, 609 (3d Cir. 1990).   As Defendant notes, however, "[e]nforcement of [Title II] rests exclusively in the hands of the Secretary of Labor. . . . No private cause of action exists to enforce [Title II's] provisions." *Brock*, 783 F.2d at 241; *see also Dole*, 894 F.2d at, 609 ("In general, the structure of the LMRDA contemplates enforcement . . . by the Secretary of Labor for alleged violations of Title II[.]").   Plaintiff does not respond to this argument, *see* doc. 16 at 7, and the Court should find that he has not stated a claim against the Union Defendants in Count 9.

---

[11]   The Union Defendants have not moved for dismissal of Plaintiff's LMRDA claims in Counts 4-8.   *See* doc. 14 at 6, 11.

The Union Defendants also ask the Court to dismiss Count 10, which Plaintiff bases on 29 U.S.C. § 501(a) and (b), doc. 1 at 29, as to Local 709 and IA.  Doc. 14 at 8.  "Under [§] 501(b), an action may be brought against any 'officer, agent, shop steward, or representative' of any labor organization alleged to have violated the fiduciary duties imposed by [§] 501(a)." *Frantz v. Sheet Metal Workers Union Loc. No. 73*, 470 F. Supp. 223, 226 (N.D. Ill. 1979).  Accordingly, courts have held that § 501(b) "does not provide for an action against a labor organization." *Id.* (citing *Aho v. Bintz*, 290 F. Supp. 577, 579 (D. Minn. 1968) ("On its face, [§ 501] does not apply, nor was it intended to apply to actions against employers or labor organizations.")).  Plaintiff does not respond to this argument, doc. 16 at 7, and the Court should agree that he has not stated a claim against Local 709 and IA in Count 10.

The Union Defendants argue that Count 10 should also be dismissed as to the remaining Union Defendants because Plaintiff has not met the statutory prerequisites for filing a suit under 29 U.S.C. § 501(b).  Doc. 14 at 8-9.  "One condition precedent is that the plaintiff made a request 'to sue or recover damages or secure an accounting or other appropriate relief,' and the union or its governing officers failed or

22

refused to act on the request within a reasonable time." *Gould on behalf of St. Louis - Kansas City Carpenters Reg'l Council v. Bond*, 1 F.4th 583, 589 (8th Cir. 2021) (analogizing § 501(b)'s demand requirement to the demand requirement in a shareholder derivative suit); *see also Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Statham*, 97 F.3d 1416, 1419 (11th Cir. 1996) ("[A]n individual who wishes to sue for breach of an official's subsection 501(a) fiduciary duty must first request the union to proceed against the official."). Section 501(b) also provides that "[n]o such [judicial] proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown[.]" 29 U.S.C. § 501(b); *see also Coleman v. Brotherhood of Ry. & S.S. Clerks*, 340 F.2d 206, 208 (2d Cir. 1965) (leave requirement "is clearly designed to protect union officials from unjust harassment").

The Union Defendants argue that Count 10 should be dismissed because Plaintiff did, *inter alia*, not obtain the Court's leave to file suit "upon verified application and for good cause shown[.]" Doc. 14 at 8 (quoting 29 U.S.C. § 501(b)). Although "[t]he existence of 'good cause' may be discernible from the allegations of the verified complaint", *Averhart v. Commc'ns Workers of Am.*, 2013 WL 4495953, at *2 (D.N.J.

Aug. 20, 2013) (quoting *Loretangeli v. Critelli*, 853 F.2d 186, 192 (3d Cir. 1988)), courts have dismissed plaintiffs' Section 501(b) claims when plaintiffs "neither sought leave of court nor filed a 'verified complaint.' " *Holmes v. Grooms*, 391 F. Supp. 3d 536, 544 (E.D. Va. 2019).[12]   Here, since Plaintiff has not requested the Court's leave, and since his complaint is not "verified",[13] the Court lacks subject matter jurisdiction over his Section 501(b) claim in Count 10.   *See Holmes*, 391 F. Supp. 3d at 544.   *Cf. Phillips*, 403 F.2d at 830 (recognizing that the prerequisites of Section 501(b) "have been held to reflect the congressional purpose to limit federal jurisdiction."); *Statham*, 97 F.3d at 1419-20 (discussing the jurisdictional implications of Section 501(b)).

---

[12]   *See also Austin v. Trandell*, 207 F. Supp. 2d 616, 620 (E.D. Mich. 2002) (noting that courts allow plaintiffs to show good cause in verified complaints, and concluding "[h]ere, neither the original complaint, nor the amended complaint is verified and there has been no request to proceed from plaintiffs in any pleading or paper filed with the Court.")

[13]   *See Locke v. 18th Jud. Cir. of Fla.*, 2021 WL 2905463, at *1 n.1 (M.D. Fla. May 10, 2021) (citing *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 925 (11th Cir. 2016)) ("[A] plaintiff files a verified complaint when he swears to the truth of the factual allegations in the complaint"); 28 U.S.C. § 1746 (discussing unsworn declarations); *see generally* doc. 1 (Plaintiff's Complaint does not indicate that it is "verified" and his signature does not comport with the requirements of § 1746).

Plaintiff bases Count 11 on 29 U.S.C. § 529, doc. 1 at 31, which provides:

> It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. . . .

29 U.S.C. § 529.  The Union Defendants argue that Count 11 should be dismissed because Plaintiff does not allege that they "fine[d], suspend[ed], expel[led], or otherwise discipline[d]" him within the meaning of the statute.  Doc. 14 at 9-10.  Plaintiff does not respond to this argument.  *See* doc. 16 at 7.

The Court agrees with the Union Defendants that Plaintiff does not allege that any defendant "fine[d], suspend[ed], [or] expel[led]" him.  *See generally* doc. 1.  As to the final adverse action listed in § 529, "otherwise discipline", the Supreme Court has explained that "discipline[e]" does not encompass "all acts that deterred the exercise of rights protected under the LMRDA, but rather . . . denote[s] only punishment authorized by the union as a collective entity to enforce its rules." *Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*, 493 U.S. 67, 91 (1989).  Accordingly, "discipline . . . impl[ies] some sort of established disciplinary process

25

rather than ad hoc retaliation by individual union officers." *Id.* at 91-92. To state a claim under § 529, Plaintiff "cannot allege simply that 'union officers' carried out 'personal vendettas' against him, [cit.]—no, he must allege that he experienced '[t]he opprobrium of the union *as an entity*,' [cit.], with the retaliation resulting from an 'established disciplinary process[.]" *Lydon v. Loc. 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 55 (1st Cir. 2014) (quoting *Breininger*, 493 U.S. at 91, 94) (emphasis added by *Lydon* Court).

The Union Defendants correctly assert that "while [Plaintiff] may allege 'ad hoc retaliation' by Local 709 union officers, he does not allege that he was punished by any tribunal or subjected to any proceedings convened by the Local 709 or the IA to apply discipline." Doc. 14 at 10 ("Plaintiff's claims that he was yelled at during union meetings and 'blackballed' from employment referrals do not qualify as discipline under the Supreme Court's analysis."). Plaintiff does not point to any allegation that he was "disciplined" within the meaning of § 529 in his response, *see* doc. 16 at 7, and the Court has not identified such an allegation in his Complaint, doc. 1. Accordingly, Plaintiff has not stated a claim against the Union Defendants in the current iteration of Count 11. He is,

however, entitled to one opportunity to amend this claim as discussed in
more detail below.

IV.    *Plaintiff's claims against the DOL*

The DOL argues that all of Plaintiff's claims against it should be
dismissed because he has failed to state a claim under Title VII[14] or the
LMRDA.  Doc. 19 at 1; *see also* doc. 22 (Plaintiff opposes DOL's Motion to
Dismiss, but does not identify a basis for his claims other than Title VII
and LMRDA).  For the following reasons, Plaintiff has failed to state a
claim against the DOL.

The DOL correctly notes that "[a] Title VII workplace
discrimination claim can only be brought by an employee against his
employer", and that Plaintiff does not allege any employment
relationship with the DOL.  Doc. 19 at 7 (quoting *Peppers v. Cobb Cnty.,
Georgia*, 835 F.3d 1289, 1297 (11th Cir. 2016)).   Additionally, as
discussed, "a party not named in the EEOC charge cannot be sued in a
subsequent civil action",  *Virgo*, 30 F.3d at 1358, and a "plaintiff's judicial
complaint is limited by the scope of the EEOC investigation which can

---

[14]  Although Plaintiff does not specifically reference the DOL in his Title VII counts,
he does reference the "Defendants" generally.  *See* doc. 1 at 14-18 (Counts 1-3).

reasonably be expected to grow out of the charge of discrimination."
*Gregory*, 355 F.3d at 1280 (quotations and citation omitted).  Plaintiff did
not name the DOL in his charge, nor would an EEOC investigation
reasonably be expected to grow out of the allegations in the charge.  *See*
doc. 14-1 at 2.  Accordingly, to the extent Plaintiff asserts Title VII claims
against the DOL, those claims fail.  *See also* doc. 22 at 1-4 (Plaintiff does
not address whether he has stated a Title VII claim against the DOL in
his response).[15]

The DOL argues that Plaintiff has failed to state a LMRDA claim
against it because the United States has not waived its sovereign
immunity under the statute.  Doc. 19 at 3-4.  "Absent a waiver, sovereign
immunity shields the Federal Government and its agencies from suit."
*F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994).  Plaintiff does not respond to
this argument, which is bolstered by caselaw.  *See, e.g.*, *Hudson v. Am.*
*Fed'n of Gov't Emps.*, 2020 WL 2496952, at *3 (D.D.C. May 14, 2020)

---

[15] The DOL also correctly notes that "[t]he only proper defendant in a Title VII action
against a federal agency is the head of that agency."  Doc. 19 at 7 (citing 42 U.S.C. §
2000e-16(c); *Laurent v. Potter*, 405 F. App'x 453, 455 (11th Cir. 2010) ("Title VII
provides that the 'head of the department, agency, or unit' that allegedly
discriminated against the plaintiff 'shall be the defendant' in any civil action by a
federal employee claiming discrimination.").  Plaintiff has failed to state a Title VII
claim against the DOL for this reason as well.

(granting the DOL's motion to dismiss LMRDA claims when "[Plaintiff] has not explained how the LMRDA permits [damages] against the Government or how it has waived its sovereign immunity to such a claim[.]").  Additionally, the DOL correctly notes that "a federal district court only has jurisdiction under the LMRDA for disputes involving 'employees' of 'employers' and the 'labor organizations' to which the 'employees' belong as each of these terms is defined in the statute", *A've v. Sowels*, 145 F.3d 1329 (6th Cir. 1998), and Plaintiff does not explain why the DOL is a "labor organization" under 29 U.S.C. § 402(i).  *See generally* doc. 22; *see also Hester v. Int'l Union of Operating Engineers*, 818 F.2d 1537, 1541 (11th Cir. 1987) ("The LMRDA expressly excludes, as an 'employer,' the United States and its corporations[.]") (reversed on other grounds).

Although Plaintiff's response is unclear, he appears to argue that the DOL should have taken some action regarding his complaints about the union.  *See* doc. 22 at 3 ("The Secretary should have at the very least start[ed] an investigation.  They did [not]. . . . Plaintiff made the Secretary aware of multiple violations perpetrated by the Union . . . yet the Secretary did nothing.  Is Plaintiff to believe that these violators can

. . . act with complete impunity?").  The Supreme Court, however, "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  And "[w]here an agency has absolute discretion over a particular matter, judicial review of agency action relating to that matter is not available." *Morrison v. U.S. Dep't of Lab.*, 713 F. Supp. 664, 669 (S.D.N.Y. 1989). Accordingly, Plaintiff has failed to state a LMRDA claim against the DOL.

## V.   *Plaintiff's opportunity to amend his Complaint*

Generally, before a *pro se* plaintiff's complaint is dismissed for failure to state a claim, he must be afforded an opportunity to amend his complaint.  *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003); *Rogers v. Shinseki*, 2014 WL 1093147, at *3 (S.D. Ga. Mar. 18, 2014).  If amendment would be futile, however, "no such opportunity must be afforded."  *Dupree v. Owens*, 2021 WL 2519003, at *5 (N.D. Ga. Apr. 6, 2021) (citing *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019)).  An opportunity to amend is futile if the amended

complaint would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

As discussed, the DOL has shown that Plaintiff failed to state a Title VII claim against it because he has not alleged or argued that it is his "employer", and even if he did, it is not a proper defendant in this case. Doc. 19. Additionally, he has failed to state a LMRDA claim against the DOL because the United States has not waived sovereign immunity under the statute. Plaintiff cannot cure these deficiencies by adding additional allegations regarding the DOL in an Amended Complaint, and amendment would therefore be futile as to these claims. Accordingly, the DOL's Motion to Dismiss should be **GRANTED**, doc. 19, and all of Plaintiff's claims against the DOL should be **DISMISSED**.

The Union Defendants have also shown that Plaintiff has failed to state a Title VII claim against Dean, McMillan, and Sample because they are not "employers" within the meaning of the statute. Additionally, he has failed to state a Title VII claim against IA because he did not name it as a respondent in his EEOC charge. Finally, his "hostile environment" claim in Count 2 fails as to all Union Defendants because it is based on facts which are not included in the EEOC charge. Plaintiff cannot cure

these defects by adding allegations in an Amended Complaint. Accordingly, all of Plaintiff's Title VII claims (contained in Counts 1-3) should be **DISMISSED** as to Dean, McMillan, Sample, and IA. Count 2 should be **DISMISSED** as to all Union Defendants. The Union Defendants' Partial Motion to Dismiss should be **GRANTED** as to those claims. Doc. 14, in part.

The Union Defendants' Partial Motion to Dismiss also demonstrates that Plaintiff has failed to state a LMRDA claim against them in Count 9 because 29 U.S.C. § 431 does not create a private cause of action. Additionally, Count 10 fails as to IA and Local 709 because 29 U.S.C. § 501(b) does not provide for a cause of action against labor organizations. Count 10 also fails as to all Union Defendants because Plaintiff has not "obtained [leave of the court] upon verified application", which is a "necessary step that must occur before jurisdiction vests" under 29 U.S.C. § 501(b). *Holmes*, 391 F. Supp. 3d at 542. Since Plaintiff cannot amend these defects by alleging additional facts, Counts 9 and 10 should be **DISMISSED** as to all Union Defendants. The Partial Motion to Dismiss should be **GRANTED** as to those claims. Doc. 14, in part.

32

Finally, although Plaintiff has failed to state a claim against the Union Defendants under Count 11 because he has not alleged that they "fine[d], suspend[ed], expel[led], or otherwise discipline[d]" him within the meaning of 29 U.S.C. § 529, the Court cannot conclude that amendment would be futile as to this count, since Plaintiff could plausibly allege additional facts clarifying the actions the union took against him. Plaintiff may therefore amend his Complaint as to Count 11 against the Union Defendants.

In summary, the Court **RECOMMENDS** that the DOL's Motion to Dismiss be **GRANTED**, doc. 19, and that all of Plaintiff's claims against the DOL be **DISMISSED**. The Court also **RECOMMENDS** that the following claims be **DISMISSED**:

- Counts 1-3 as to IA, Dean, McMillan, and Sample

- Count 2 as to all Union Defendants[16]

- Counts 9-10 as to all Union Defendants

Accordingly, to the extent the Union Defendants' Partial Motion to

---

[16] The Union Defendants provide a summary of the claims they ask the Court to dismiss. Doc. 14 at 11. One of the claims listed in that summary is Count 3 as to "all Union Defendants." *Id.* Although their brief argues that Count 3 should be dismissed as to IA, Dean, McMillan, and Sample, the Court cannot locate specific argument regarding Plaintiff's Count 3 claim against Local 709. *See* doc. 14 at 3-6 (portion of Union Defendants' brief discussing regarding Title VII claims).

Dismiss seeks dismissal of those claims, it should be **GRANTED**. Doc. 14, in part. Although Plaintiff has failed to state a claim in Count 11 as to the Union Defendants, the Court will afford him a __single__ opportunity to amend his Complaint to allege additional facts regarding that claim. Plaintiff is **DIRECTED** to submit a __single__ Amended Complaint within 30 days from the date of entry of this Order. The Amended Complaint will supersede Plaintiff's original Complaint, doc. 1, and it must not incorporate any prior pleadings by reference. The Amended Complaint may only add allegations regarding Count 11 as to all Union Defendants. Plaintiff may also add allegations regarding the counts which the Union Defendants have not challenged.

VI. _Remaining motions_

Plaintiff submitted a filing approximately one month after he filed the Complaint which states that the Defendants had not yet responded to his "Notice of Lawsuit and Request to Waive Service of Summons." Doc. 7 at 2-3. The filing explains that if he does not receive Defendants' waiver within 15 days of the date of the filing, he will "initiate" service via a process server. _Id._ at 3. He requests that the Court "enforce payment of service of summons and complaint for having refused Notice

34

of Lawsuit and Waiver.  Immediately soon thereafter once Plaintiff has perfected such via Process Server. [sic]" *Id.*

Under Fed. R. Civ. P. 4(d)(2)(A), "[i]f a defendant . . . fails, without good cause, to sign and return a waiver requested by a plaintiff . . . , the court must impose on the defendant[, *inter alia*,] . . . the expenses later incurred in making service[.]"  Since the Union Defendants all waived service, *see* doc. 8 at 4-7; doc. 9-1 at 4, Plaintiff's request the Court require them to cover his service expenses is **DISMISSED** as moot.  Doc. 7.  Additionally, Plaintiff's request that the DOL cover his service costs is **DENIED**, doc. 7 because Fed. R. Civ. P. 4(d)(1) "require[es] individuals, corporations, partnerships, and associations to waive service, but not the state or federal government[.]"  *Harrell v. Hornbrook Cmty. Servs. Dist.*, 2015 WL 5329779, at *15 (E.D. Cal. Sept. 10, 2015).

Plaintiff also filed a "Motion to Compel", doc. 23, which he supplemented with a "Motion for Signed Order Under . . . Motion to Compel", doc. 26, and a "Response", doc. 27.  Although the filings are unclear, Plaintiff asks the Court to "inform the entire [union] membership" about this case, doc. 23 at 5, order Plaintiff himself to inform members about the case, doc. 23-2 at 2, and order Defendants to

"provide . . . [Local] 709's [m]embers['] addresses so Plaintiff can communicate with [them] directly." Doc. 26 at 2. The closest Plaintiff comes to citing authority supporting his requests is two pages of copied-and-pasted language from LMRDA. *See* doc. 27 at 2-4. The Union Defendants point out that the "only section of the LMRDA that addresses membership lists . . . provides members only the right to inspect a membership list once within 30 days of an election in which they are running for union office[.]" Doc. 25 at 2 (citing 29 U.S.C. § 481(c)). Plaintiff does not explain why LMRDA authorizes the Court to provide any of his requested relief; rather, he states that "Plaintiff has not asked for nor is he running for [union] office, the list and addresses of membership is to have the entire membership participate . . . and have a generally idea of what has Mr. McMillan been doing behind the membership's back. [sic]" Doc. 27 at 4. Plaintiff's unclear, unsupported requests are **DENIED**. Docs. 23, 26 & 27. His "Motion to Compel" also asks the Court to "fast-track his Complaint. Direct such [presumably, the union members or the Defendants] to get ready for trial. [sic]" Doc. 23 at 5. His request to expedite this case is also **DENIED**. Doc. 23.

Finally, given the foregoing dispositions, Defendants' motions to stay discovery pending disposition of their Motions to Dismiss are **DISMISSED** as moot.  Docs. 15 & 20.  Plaintiff asks the Court to "strike" the Union Defendants' motions to dismiss and stay because they erroneously captioned the motions with the heading "In the United States District Court for the *Northern* District of Georgia Savannah Division."  Doc. 16 at 2, 7 (emphasis added) (citing doc. 14 at 1; doc. 15 at 1).  The Court declines to strike pleadings based on a typographical error, and Plaintiff's request is **DENIED**.  Doc. 16; *see also* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

## CONCLUSION

For the foregoing reasons, Plaintiff's "Motion to Compel", as supplemented, is **DENIED**.  Docs. 23 & 26.  Plaintiff's request that the Union Defendants pay the costs associated with his service of the Complaint is **DISMISSED** as moot, and his request that the DOL pay his service costs is **DENIED**.  Doc. 7.  Plaintiff's motion to "strike" the Union Defendants' pleadings is **DENIED**.  Doc. 16.

The DOL's Motion to Dismiss should be **GRANTED**. Doc. 19. The Union Defendants' Partial Motion to Dismiss should be **GRANTED**, in part, doc. 14, and it is **ORDERED** that Plaintiff will have a single opportunity to file an Amended Complaint within 30 days from the date of entry of this Order, consistent with the instructions above. Given Plaintiff's limited opportunity to amend, to the extent the Union Defendants seek dismissal of Count 11, that request is **DISMISSED** as moot. Doc. 14, in part. They may renew their request as contemplated by the Federal Rules of Civil Procedure after Plaintiff files his amended pleading. Defendants' motions to stay discovery pending disposition of their Motions to Dismiss are **DISMISSED** as moot. Docs. 15 & 20.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED, REPORTED, and RECOMMENDED,** this 12th day of January, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA